IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BLUES DESTINY RECORDS, L.L.C.,

       Plaintiff,

v.

GOOGLE, INC., MICROSOFT
CORPORATION, and RAPIDSHARE AG,

       Defendants.

Case No:  3:09-cv-538-WS/EMT

## DEFENDANT MICROSOFT CORPORATION'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW, Defendant MICROSOFT CORPORATION ("Microsoft"), by

and through its undersigned counsel, and files this Motion for Partial Summary

Judgment.  As explained in the incorporated Memorandum of Law below, based on the

safe harbor provision of 17 U.S.C. § 512(d), Microsoft is entitled to (1) partial summary

judgment in its favor on all claims for damages sought by the Complaint, and (2) an order

that Plaintiff's equitable remedies are limited to the injunctive relief provided by 17

U.S.C. § 512(j).[1]

## CERTIFICATE OF COUNSEL CONFERENCE

Pursuant to N.D. Fla. Loc. R. 7.1(B)(3), counsel moving for summary judgment

need not confer with counsel prior to filing a motion for summary judgment.

---

[1] As explained below, this motion is submitted for alternative consideration, in the event the Court does not
grant in its entirety Microsoft's Motion to Dismiss, filed concurrently herewith.

Nonetheless, counsel for Microsoft advised Plaintiff's counsel in advance of the substance of this motion, and Plaintiff did not agree to the relief sought here.

## MEMORANDUM OF LAW

### INTRODUCTION

In this copyright infringement action, Plaintiff Blues Destiny Records, L.L.C. asserts that Defendant Rapidshare AG has facilitated the online file-sharing of unauthorized copies of songs that Plaintiff produced, distributes, and sells. Plaintiff asserts that Defendants Google, Inc. and Microsoft are secondarily liable for the direct copyright infringement by Rapidshare because their search engines give Internet users links to unauthorized copies of Plaintiff's songs that are distributed by Rapidshare. Microsoft has concurrently filed a motion to dismiss the three secondary liability claims against it because the Court lacks subject matter jurisdiction over these claims and because the three causes of action pled fail to state a claim against Microsoft. However, in the event any of Plaintiff's claims survive Microsoft's motion to dismiss, Microsoft seeks summary judgment that the alleged conduct of Microsoft is protected by a safe harbor provision of the Digital Millennium Copyright Act ("DMCA").

This safe harbor, codified in 17 U.S.C. § 512(d), severely limits the potential liability of an Internet search provider that links to or references a website containing allegedly infringing content in circumstances where the search provider can demonstrate that, once it received proper notice asserting that the search provider is linking to specific allegedly infringing material, it acted expeditiously to remove the link. The undisputed facts here establish that Microsoft satisfies this safe harbor provision. The Complaint alleges that Microsoft only learned of the alleged infringement through notice from Plaintiff, and it is undisputed that Plaintiff first provided Microsoft with the identity of

2

the specific links to be removed on November 23, 2009, and that Microsoft removed all

of the identified links from its search engine on November 25, 2009.  Because Microsoft

acted expeditiously to remove the offending links once it had sufficient information to

locate them, summary judgment on the applicability of this safe harbor provision is

warranted at this early stage of the case.

### FACTUAL BACKGROUND

According to the Amended Complaint ("Complaint"), Plaintiff is the copyright

owner or licensee of certain sound recordings listed on Exhibit A to the Complaint, all of

which are songs by musical artists Peter McGraw, Ronny Sessum, and Roy Powers.

Amended Complaint (Dkt. No. 4) ("Compl.") ¶ 13 & Ex. A.  The Complaint alleges that

Defendant Rapidshare AG operates various websites that contain unauthorized copies of

Plaintiff's recordings available for free download and that Rapidshare has thereby

infringed the copyrights in those recordings.  *Id.* ¶ 20.  Plaintiff claims that Microsoft has

indirectly infringed the copyrighted recordings because Microsoft's Internet search

engine, known as "Bing," provided links to the copies of the recordings on Rapidshare's

websites, in response to searches by Bing users.  *Id.* ¶¶ 36-43.

Microsoft has a written and publicly accessible policy for copyright owners to

submit notifications pursuant to the DMCA that the Bing search engine is providing links

to website addresses hosting unauthorized copies of copyrighted works.  Statement of

Material Facts in Support of Microsoft's Motion for Partial Summary Judgment ("S.F.")

¶¶ 1-2.  The policy provides information for contacting the agent that Microsoft has

designated to receive DMCA notifications, and the policy explains the information

required by the DMCA for a notification to be effective, so that Microsoft can then take

prompt steps to remove the identified links.  *Id.* ¶¶ 3-4; *see* Declaration of Elaine

3

Peterson ("Peterson Decl.") ¶¶ 3-4; Declaration of Sasi Parthasarathy ("Parthasarathy Decl.") ¶¶ 2-4.  In particular, once a complainant identifies the website address (also known as a Uniform Resource Locator or "URL") hosting unauthorized copies of copyrighted works, Microsoft has a process to exclude those URLs from the Bing search engine so that links to the URLs will not be displayed in response to user's searches.  S.F. ¶ 6; *see* Parthasarathy Decl. ¶ 4.

According to the Complaint, on November 19, 2009, David Cox of Blues Destiny Records sent a communication to Microsoft using a feedback tool on the Bing website, which permits Bing users to request new features, report bugs, or provide other comments to Microsoft about the Bing service.  Compl., Ex. B at 41.[2]  This communication stated that "[y]ou are selling or enabling the theft of our Artists material (illegal downloads)," and it identified two artists and albums by name ("Roy Powers Firing Line" and "Peter McGraw More McGraw").  *Id.*[3]  Although the communication requested that Microsoft remove links to the "illegal downloads," the communication did not identify any of the links that should be removed.  S.F. ¶ 9.

On November 20, 2009, Microsoft received an email at its designated DMCA agent's email address, purportedly from David Cox of Blues Destiny Records.  Compl., Ex. B at 42; Declaration of Elaine Peterson ("Peterson Decl."). ¶ 5 & Ex. B.  The subject of the email was "This is your Notice. Second Request," and its content was similar to that of the November 19 communication.  Compl., Ex. B at 42; Peterson Decl., Ex. B. The November 20 email likewise failed to identify the precise links to the allegedly

---

[2] The feedback feature is available by clicking on the link entitled "Tell us what you think," located at the bottom of the Bing homepage.  *See* www.bing.com.

[3] It is unclear from the copy attached to the Complaint whether the communication included additional text not shown in that copy.

infringing recordings on Rapidshare's websites. S.F. ¶ 11. A Microsoft employee responded to this email in approximately five minutes and explained that Microsoft was unable to evaluate the request because it lacked all of the information required of a proper DMCA notice. Compl., Ex. B at 42; Peterson Decl. ¶ 6 & Ex. C. The email from Microsoft quoted the relevant provision of the DMCA and requested a response that contained all of the requisite information. Compl., Ex. B at 42; Peterson Decl., Ex. C. A few hours later, Microsoft received another email purportedly from David Cox of Blues Destiny Records, entitled "This is your Notice. Fourth Request." Compl., Ex. B at 43; Peterson Decl. ¶ 7 & Ex. D.[4] This email and an attachment which followed contained some additional information, but neither document identified the specific links to the recordings allegedly present on the Rapidshare websites.[5] S.F. ¶¶ 12-13.

On Monday, November 23, 2009, Microsoft received another email at its designated agent's email address, purportedly from David Cox of Blues Destiny Records, with the subject "This is your Notice 5th Request." Peterson Decl. ¶ 10 & Ex. G. This email contained an attachment that listed the URLs of the recordings allegedly available on Rapidshare's websites. S.F. ¶ 14. Within 33 minutes, a Microsoft employee responded and explained that the November 23 email "provides us with the identifying URLs that we can forward to our search team for delisting from our search index." Peterson Decl. ¶ 11 & Ex. H. Immediately thereafter, the same Microsoft employee then initiated a process to exclude the URLs from the Bing search engine. Id. ¶ 12. The

---

[4] Microsoft did not receive any earlier email purporting to be a third request. Peterson Decl. ¶ 7; see Compl., Ex. B.

[5] The first line of the "fourth request" email stated, "We have attached the form you requested," but the email contained no attachment. Peterson Decl., Ex. D. Within ten minutes, a Microsoft employee responded and requested the attachment (id. ¶ 8 & Ex. E), and Microsoft received a response containing the attachment shortly thereafter (id. ¶ 9 & Ex. F).

URLs were excluded from Bing two days later, on November 25, 2009, so that links to

the URLs would not appear in any further Bing search results. S.F. ¶ 15 (citing

Parthasarathy Decl. ¶¶ 3-4; Peterson Decl. ¶ 12).

## APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 56 permits a party to "move for summary

judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P.

56(c)(1)(A).  Summary judgment is appropriate where the pleadings and evidence "show

that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986) (disputed fact is not material unless it "might affect the

outcome of the suit under the governing law").  Partial summary judgment as to remedies

is appropriate where the undisputed facts demonstrate that a plaintiff cannot recover

damages or certain categories of damages. *See Dynes v. Army Air Force Exch. Serv.*, 720

F.2d 1495, 1498-99 (11th Cir. 1983) (affirming partial summary judgment dismissing

damages claim that was unavailable as a matter of law); *Neal v. Manpower Int'l, Inc.*, No.

3:00-cv-277/LAC, 2001 U.S. Dist. LEXIS 25805, at *47-*50 (N.D. Fla. Sept. 18, 2001)

(granting partial summary judgment on damages claims not available based on

undisputed facts).

## ARGUMENT

In enacting the DMCA, Congress established a number of statutory safe harbors

which serve to limit potential copyright liability of online service providers, including

search engines. *See* 17 U.S.C. § 512; *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102,

1109 (9th Cir. 2007).  If a service provider qualifies for one of the safe harbors, the

provider "shall not be liable for monetary relief, or, except as provided in subsection (j),

for injunctive or other equitable relief."  17 U.S.C. § 512(a)-(d).

One of the DMCA's safe harbors limits liability for infringement relating to

"information location tools"—that is, Internet search engines:  "A service provider shall

not be liable . . . for infringement of copyright by reason of the provider referring or

linking users to an online location containing infringing material or infringing activity, by

using information location tools, including a directory, index, reference, pointer, or

hypertext link."  *Id.* § 512(d).  Section 512(d) requires that, for the safe harbor to apply, a

defendant that qualifies as a "service provider:"

> (1)(A) does not have actual knowledge that the material or activity is
> infringing;
>
> (B) in the absence of such actual knowledge, is not aware of facts or
> circumstances from which infringing activity is apparent; or
>
> (C) upon obtaining such knowledge or awareness, acts expeditiously to
> remove, or disable access to, the material;
>
> (2) does not receive a financial benefit directly attributable to the
> infringing activity, in a case in which the service provider has the right and
> ability to control such activity; and
>
> (3) upon notification of claimed infringement as described in subsection
> (c)(3), responds expeditiously to remove, or disable access to, the material
> that is claimed to be infringing or to be the subject of infringing activity,
> except that, for purposes of this paragraph, the information described in
> subsection (c)(3)(A)(iii) shall be identification of the reference or link, to
> material or activity claimed to be infringing, that is to be removed or
> access to which is to be disabled, and information reasonably sufficient to
> permit the service provider to locate that reference or link.

*Id.*

The undisputed facts here establish that Microsoft is entitled to the safe harbor of

Section 512(d).  Microsoft is "a provider of online services" with respect to the Bing

search engine—the subject of Plaintiff's infringement allegations—and so meets the

7

statutory definition of "service provider." *Id.* § 512(k)(1)(B).  All of the infringement

alleged against Microsoft falls within the scope of the safe harbor because the alleged

infringement is "by reason of [Microsoft] referring or linking users to an online location

containing infringing material or infringing activity, by using information location tools."

*Id.* § 512(d).  Here, the online location is Rapidshare's websites; the allegedly infringing

materials are the sound recordings allegedly present on the websites; and the information

location tool is the Bing search engine, which allegedly provides links to the recordings.

Compl. ¶¶ 33, 36-42.  In addition, as detailed below, each of the three conditions of

Section 512(d) is satisfied.

I.    **At All Relevant Times, Microsoft Either Did Not Know of the Alleged**
      **Infringement by Rapidshare or Acted Expeditiously to Remove the**
      **Offending Links.**

The first condition of the safe harbor of Section 512(d) requires that, during the

period of infringement, the service provider:  (a) "does not have actual knowledge that

the material or activity is infringing;" (b) "in the absence of such actual knowledge, is not

aware of facts or circumstances from which infringing activity is apparent" (*i.e.,*

constructive knowledge) or (c) "upon obtaining such knowledge or awareness, acts

expeditiously to remove, or disable access to, the material."  17 U.S.C. § 512(d)(1).  The

Complaint specifically alleges that Microsoft obtained knowledge of the alleged

infringement of Plaintiff's recordings as a result of Plaintiff's notices in November 2009;

there is no allegation that Microsoft had actual or constructive knowledge of the alleged

infringement before that time.  Compl. ¶ 48; *id.*, Ex. B at 41.[6]  As we now explain, at

---

[6] Some of the Complaint's allegations suggest that Microsoft was generally aware that Rapidshare's
business is based on the distribution of unauthorized copies of songs. *See* Compl. ¶¶ 18-19. These
allegations, even if proven, could not establish that Microsoft had constructive knowledge of infringing
activity under Section 512(d)(1)(B), because "general awareness of infringement, without more," is not

least Plaintiff's November 19 and 20 communications were ineffective as a matter of law to put Microsoft on notice of the alleged infringement, and, in any event, Microsoft "act[ed] expediously to remove, or disable access to," the allegedly infringing material once it received Plaintiff's communications.

A.     **A Notification from a Copyright Owner Must Comply with Section 512(c) in Order to Provide Actual or Constructive Knowledge of the Alleged Infringement to a Service Provider.**

Under Section 512(d), a communication from a copyright owner to a service provider does not give rise to actual or constructive knowledge of infringement on the part of the service provider, unless the notification either (a) "compl[ies] substantially with the provisions of [Section 512(c)(3)(A)];" or (b) "substantially complies with clauses (ii), (iii), and (iv) of [Section 512(c)(3)(A)]," and the service provider does not "promptly attempt[] to contact the person making the notification or take[] other reasonable steps to assist in the receipt of notification that substantially complies with all the provisions of [Section 512(c)(3)(A)]." 17 U.S.C. § 512(c)(3)(B); *see* 17 U.S.C. § 512(d)(3) (incorporating notice provisions of Section 512(c)(3)).

Section 512(c)(3)(A) also provides that a notification of claimed infringement is not effective unless it is communicated in writing to the service provider's designated agent. In order to permit complainants to send notifications easily to the designated agent, the service provider must make the agent's name, address, phone number, and email address available on a publicly-accessible website, and the provider also must provide this information to the Copyright Office. *Id.* § 512(c)(2).

Further, the notification sent to the designated agent must contain six elements:

---

sufficient to give rise to constructive knowledge under the DMCA. *See UMG Recordings, Inc. v. Veoh Networks Inc.*, ___ F. Supp. 2d ____, No. CV 07-5744, 2009 WL 3422839, at *9 (C.D. Cal. Sept. 11, 2009).

To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

*Id.* § 512(c)(3)(A).  For purposes of the "information location tools" safe harbor, the statute specifically provides that the information in clause (iii) "shall be identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link."  *Id.* § 512(d)(3).  To "comply substantially" with these requirements, a notification must include *all* six of the required elements.  *CCBill*, 488 F.3d at 1112 ("The statute thus signals that substantial compliance means substantial compliance with *all* of § 512(c)(3)'s clauses, not just some of them.") (emphasis in original).

B.   **Because Plaintiff's November 19 and 20 Communications Did Not Comply with Section 512(c), They Failed As a Matter of Law to Trigger Microsoft's Obligation to Act Expeditiously to Remove Links to the Alleged Infringement.**

Plaintiff's initial communication, purportedly sent on November 19, 2009, failed to comply with Section 512(c)(3) in several respects.  First, the communication was not sent to Microsoft's designated agent, as required by the statute.  *See* 17 U.S.C. § 512(c)(3) (to be effective, notice must be "provided to the designated agent of a service provider").  Pursuant to Section 512(c)(2), the Bing website links to Microsoft's "Notice and Procedure for Making Claims of Copyright," which identifies Microsoft's designated agent and provides the agent's address, phone number, and email address (dmcaagnt@microsoft.com) for sending notifications.  S.F. ¶¶ 1-4 (citing Peterson Decl. ¶ 3 & Ex. A).  This information is also available through the Copyright Office website.  *Id.* ¶ 5.  The copy of the communication attached to the Complaint, however, indicates that it was not sent to Microsoft's agent, but rather was sent using Bing's feedback tool for general comments from the public.  S.F. ¶ 7 (citing Compl., Ex. B at 41).  For this reason alone, the communication did not constitute actual or constructive notice of the alleged infringement.

In addition, the November 19 communication is missing several of the six required elements of Section 512(c)(3).  On its face the communication does not contain "[a] statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed."  17 U.S.C. § 512(c)(3)(A)(vi); *see* S.F. ¶ 8.  As the Ninth Circuit has ruled, this alone is fatal, as the law does "not require a service provider to start potentially invasive proceedings if the complainant is unwilling to state

11

under penalty of perjury that he is an authorized representative of the copyright owner, and that he has a good-faith belief that the material is unlicensed." *CCBill*, 488 F.3d at 1112.

Even more problematic, the November 19 communication lacks any "identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link." *Id.* § 512(d)(3); *see* S.F. ¶ 9. This requirement "places the burden of policing copyright infringement— identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright." *CCBill*, 488 F.3d at 1113. But, as noted, the November 19 communication attached to the Complaint only refers to the names of two of the artists and their albums. *See* Compl., Ex. B at 41. As courts have repeatedly held, merely providing recording artist names to a search engine provider, without identifying the specific links to the allegedly infringing recordings, does not constitute information reasonably sufficient to permit the service provider to locate the offending links. *See UMG Recordings*, 2009 WL 3422839, at *8 ("An artist's name is not 'information reasonably sufficient to permit the service provider to locate [such] material.'") (alteration in original); *Arista Records, Inc. v. MP3Board, Inc.*, No. 00 CIV 4660, 2002 WL 1997918, at *8-*9 (S.D.N.Y. Aug. 29, 2002).[7] Accordingly, because the communication lacked at least the elements required by clauses (iii) and (vi) of Section

---

[7] The *Arista* court held that the notifications in that case were adequate under the DMCA despite the fact that they did not identify URLs of the infringing materials, because the notifications contained screenshots of the defendant's website with highlighting over, and asterisks next to, the offending links. 2002 WL 1997918, at *9-*10. Here, by contrast, until the November 23 email, Plaintiff submitted no URLs, screenshots, or any other materials that specifically identified the links that Plaintiff sought to be removed.

512(c)(3)(A), it cannot constitute actual or constructive notice of the alleged infringement under Section 512(c)(3)(B).[8]

For similar reasons, the second and third emails identified in the Complaint, both dated November 20, also were insufficient under the statute.  The second email is substantially similar to the November 19 communication, and therefore it does not constitute notice because it is missing at least the elements required by clauses (iii) and (vi) of Section 512(c)(3)(A).[9]  S.F. ¶¶ 10-11 (citing Compl., Ex. B at 42).  When Microsoft responded to the second email with a request for the information required by the statute, Plaintiff sent the third email containing *some* additional information.  Peterson Decl. ¶ 7 & Ex. D; *id.* ¶ 9, Ex. F.  But this email still failed to identify the specific links to the allegedly infringing recordings, and instead, it again merely identified the names of the artists and albums and stated "Illegal Album Download Rapidshare."  S.F. ¶¶ 12-13 (citing Compl., Ex. B at 43; Peterson Decl., Ex. D & F).  Thus, the email did not contain "identification of the reference or link . . . that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link."  *Id.* § 512(d)(3).

Plaintiff may argue that because the third email contained the artist and album names and the word "Rapidshare," Microsoft could have performed searches on Bing to

---

[8] Moreover, because the November 19 communication lacked at least the information required by clause (iii), Microsoft had no obligation pursuant to Section 512(c)(3)(B)(ii) to "attempt[] to contact the person making the notification or take[] other reasonable steps to assist in the receipt of notification that substantially complies with all the provisions of [Section 512(c)(3)(A)]."  Microsoft does not concede that the November 19 and 20 communications complied with any of the other clauses of Section 512(c)(3)(A).

[9] Although Microsoft was not required to respond to the second email under Section 512(c)(3)(B)(ii) because it lacked at least the information required by Section 512(c)(3)(A)(iii), Microsoft did in fact respond to the email and informed the sender that all of the information required by Section 512(c)(3)(A) was required.  Peterson Decl. ¶ 6 & Ex. C.  Microsoft's response quoted the language of Section 512(c)(3)(A).  *Id.*

attempt to ascertain the offending links. But even assuming that this information would have permitted Microsoft to identify the specific links about which Plaintiff complained, the DMCA does not require a service provider to perform searches of its systems for infringing material. *See UMG Recordings*, 2009 WL 3422839, at *8. As between Plaintiff, which knew of the specific links to be removed, and Microsoft, which did not, the DMCA "places the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on" Plaintiff. *CCBill*, 488 F.3d at 1113. Accordingly, the third email also failed to comply with the statute and thus did not provide actual or constructive knowledge of the alleged infringement under Section 512(c)(3)(B).

**C.   After Receiving Plaintiff's Communications, Microsoft Acted Expeditiously to Remove the Identified Links.**

On November 23, 2009, Plaintiff sent another email to Microsoft. Peterson Decl. ¶ 10 & Ex. G. Unlike the previous communications, a document attached to the November 23 email identified the specific URLs that Plaintiff wanted Microsoft to exclude from the Bing search engine. S.F. ¶ 14; Peterson Decl., Ex. G. After receiving this email, Microsoft immediately initiated its internal process to exclude the URLs, and this process completed on November 25—just two days after receiving the email. S.F. ¶ 15; *see also* Compl. ¶ 38 (acknowledging that the offending links were removed from Bing prior to the filing of the Complaint). As of that date, searches on Bing would no longer include the links to the allegedly infringing content on the Rapidshare websites. S.F. ¶ 15 (citing Parthasarathy Decl. ¶ 4; Peterson Decl. ¶ 12). Assuming that the November 23 email complied with the DMCA—or that any of the November 19 or 20 communication were compliant (and they plainly were not)—these incontrovertible facts

14

establish that Microsoft acted expeditiously as a matter of law to remove the links upon

receipt of proper notice and therefore satisfied Section 512(d)(1).  *See Io Group, Inc. v.*

*Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1150 (N.D. Cal. 2008) (granting summary

judgment that service provider acted expeditiously where provider removed offending

content "within a few days" after receipt of compliant notice); *see also UMG Recordings*,

2009 WL 3422839, at \*2, \*10 (granting summary judgment that removal was expeditious

where service provider disabled access to content "within a day or two" of notice).

**II.     As a Matter of Law, Microsoft Neither Had the Right and Ability to Control,
         Nor Received a Financial Benefit Directly Attributable to, the Availability of
         the Recordings on Rapidshare's Websites.**

A service provider satisfies the second condition of Section 512(d) *unless* the

provider both (a) "has the right and ability to control [the infringing] activity," *and* (b)

"receives a financial benefit directly attributable to the infringing activity."  17 U.S.C. §

512(d)(2); *see Io Group*, 586 F. Supp. 2d at 1150.  These two requirements mirror the

two prongs of the test for vicarious copyright infringement, and therefore vicarious

infringement cases are instructive in applying Section 512(d)(2).  *See CCBill*, 488 F.3d at

1117 ("'direct financial benefit' should be interpreted consistent with the similarly-

worded common law standard for vicarious copyright liability"); *Io Group*, 586 F. Supp.

2d at 1150 ("These requirements grew out of the common law standard for vicarious

liability . . . ."); *see also BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138

n.19 (11th Cir. 2007) ("Liability for vicarious copyright infringement arises when the

defendant profits directly from the infringement and has a right and ability to supervise

the direct infringer . . . .") (quotation marks omitted).[10]  Here, Plaintiff does not even

allege that Microsoft had the right and ability to control the alleged infringement—*i.e.*,

the availability of the recordings on Rapidshare's websites—or received a financial

benefit directly attributable to this alleged infringement, and therefore Microsoft's

compliance with the second condition is not in dispute.

Courts have strictly interpreted the requirement that the service provider have the

right and ability to control the infringing activity: "the pertinent inquiry is not whether

[the service provider] has the right and ability to control it[s] *system*, but rather, whether

it has the right and ability to control the *infringing activity*." *Io Group*, 586 F. Supp. 2d at

1151 (emphasis in original).  This requirement is not satisfied if the service provider

merely has the right and ability to implement screening or filtering mechanisms, to block

or remove access to materials, or to terminate user accounts.  *See UMG Recordings*, 2009

WL 3422839, at *11 ("'right and ability' to implement filtering software" not enough); *Io

Group*, 586 F. Supp. 2d at 1151 ("the ability of a service provider to block or remove

access to materials" insufficient); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d

1090, 1110 (W.D. Wash. 2004) (right and ability to terminate accounts not enough).

Moreover, applying common law vicarious liability principles, the Ninth Circuit has held

that an Internet search provider did not have the right and ability to control infringement

on third-party websites, which were linked to by the provider's search engine, because

the provider had no legal right or practical ability to stop the third-party infringement.

*See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173-75 (9th Cir. 2007).

---

[10] Although Section 512(d)(2) draws on principles of vicarious liability, courts have recognized that this section often requires a greater showing than what is required under the test for vicarious liability. *See, e.g.*, *UMG Recordings*, 2009 WL 3422839, at *12.

The Complaint in this case does not allege that Microsoft has the right and ability to control the content available on Rapidshare's website, such as the allegedly infringing recordings. Rather, the Complaint merely alleges that Microsoft has "the right and ability to block or screen links to websites containing illegal copies of Plaintiff's Recordings from appearing in [Bing's] search results." Compl. ¶ 57. As the Ninth Circuit held, however, the ability to "avoid indexing websites with infringing content and linking to third-party infringing websites" does not give rise to vicarious liability. *Amazon.com*, 508 F.3d at 1174-75. This likewise does not establish that Microsoft has the right and ability to control the allegedly infringing activity under Section 512(d)(2). *See UMG Recordings*, 2009 WL 3422839, at *11 (right and ability to implement filtering mechanisms insufficient to show non-compliance with Section 512(d)(2)).

With respect to the second, independent requirement of the test—whether the service provider receives a direct financial benefit—the Ninth Circuit has stated that "the relevant inquiry is 'whether the infringing activity constitutes a draw for subscribers, not just an added benefit.'" *CCBill*, 488 F.3d at 1117 (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)). Relying in part on the legislative history of the DMCA, *CCBill* held that the mere receipt of fees by a service provider for hosting infringing websites was not an adequate financial benefit: "the legislative history expressly states that 'receiving a one-time set-up fee and flat, periodic payments for service from a person engaging in infringing activities would not constitute receiving a financial benefit directly attributable to the infringing activity." *Id.* at 1118 (quoting H.R. Rep. No. 105-551, pt. II, at 54). Here, Plaintiff merely alleges that Microsoft has a "direct financial interest" because "an increased user base searching for music downloads translates to increased

advertising revenue." Compl. ¶ 58. This attenuated interest is plainly insufficient because advertising revenue from Bing is not directly attributable to the alleged infringement by Rapidshare. Even if Rapidshare itself advertises on Bing (*see id.* ¶ 19), the advertising revenue would merely constitute "flat, periodic payments for service from a person engaging in infringing activities," and thus would not establish the financial benefit required by Section 512(d)(2). *CCBill*, 488 F.3d at 1118.

Because Plaintiff cannot establish *either* that Microsoft had direct control over the allegedly infringing activities of Rapidshare *or* that Microsoft direct benefited from those activities, Microsoft is entitled to the safe harbor of Section 512(d).

**III.    Microsoft Expeditiously Removed the Links After Receipt of Any Notice That May Have Complied with Section 512(c)(3).**

Finally, Section 512(d)(3) requires that the service provider "upon notification of claimed infringement as described in [Section 512(c)(3)], responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity." This requirement parallels the requirement of Section 512(d)(1)(C) that the service provider "act[] expeditiously to remove, or disable access to," the allegedly infringing material. As established above with respect to Section 512(d)(1), it is undisputed that Microsoft acted expeditiously in removing the offending links from the Bing search engine within two days of the November 23 email that specifically identified the allegedly infringing links (and, in any event, within six or fewer days of Plaintiff's November 19 and 20 communications, which did not provide any such information). *See supra*, § I.C. Microsoft has therefore satisfied Section 512(d)(3) as a matter of law.

## CONCLUSION

Because the undisputed facts establish that Microsoft meets the requirements of the safe harbor provision of Section 512(d), the *only* remedy against Microsoft that is available to Plaintiff *if* it succeeds on any of its claims is the narrow injunctive relief permitted by 17 U.S.C. §512(j). Accordingly, if the Court does not grant Microsoft's concurrently-filed motion to dismiss, Microsoft respectfully requests that the Court grant Microsoft's motion for partial summary judgment and enter an order limiting Plaintiff's potential remedies on the Complaint as to Microsoft to the injunctive relief allowed by 17 U.S.C. § 512(j).

Respectfully submitted,

Date: February 16, 2010

/s/ Millard L. Fretland
Millard L. Fretland
Florida Bar No. 371671
CONROY, SIMBERG, GANON, KREVANS,
ABEL, LURVEY, MORROW & SCHEFER, P.A.
One Pensacola Plaza
125 West Romana Street, Suite 150
Pensacola, FL  32502-5823
(850) 436-6605 (Telephone)
(850) 436-2102 (Facsimile)
Email: mfretland@conroysimberg.com

Simon J. Frankel (*pro hac vice*)
California Bar No. 171552
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA  94111-5356
(415) 591-6000 (Telephone)
(415) 955-6552 (Facsimile)
Email: sfrankel@cov.com

*Counsel for Defendant Microsoft Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2010, a copy of the foregoing document was filed on the Court's Electronic Case Filing System. Pursuant to Local Rule 5.1(A)(6), this constitutes service on each party who is registered as a Filing User and has consented to service by electronic means.

s/ Millard L. Fretland
CONROY, SIMBERG, GANON, KREVANS,
ABEL, LURVEY, MORROW, & SCHEFER,
P.A.
Florida Bar No. 371671
Attorney for Defendant
125 West Romana Street
Suite 150
Pensacola, FL 32502-5823
(850) 436-6605 (Telephone)
(850) 436-2102 (Facsimile)
*Counsel for Defendant Microsoft Corporation*