UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| BLUES DESTINY RECORDS, L.L.C., a Florida Limited Liability Company;<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC., a Delaware Corporation, MICROSOFT CORPORATION, a Washington Corporation, and RAPIDSHARE AG, a German Corporation<br><br>Defendants. | Case No. 3:09-CV-00538-WS-EMT |

**DEFENDANT, GOOGLE INC.'S MOTION TO
<u>DISMISS AND INCORPORATED MEMORANDUM OF LAW</u>**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Google Inc. (hereinafter "Google"), hereby moves for an Order dismissing the Amended Complaint in this action on the grounds that the Court lacks subject matter jurisdiction, or in the alternative dismissing Counts II and III of the Amended Complaint for failure to state a claim.

**MEMORANDUM OF LAW**

**<u>PRELIMINARY STATEMENT</u>**

Blues Destiny's suit seeks to hold Google liable for alleged copyright infringement committed by others at far flung regions of Cyberspace, many "clicks" away from Google's website. Through its well-known Internet search engine, Google helps people locate all manner of information that others the world over have placed on the Internet, including, apparently, material that Blues Destiny claims should not be accessible. Blues Destiny claims that individuals accessing the websites offering such material are engaged in direct copyright infringement. Google, it continues, should face indirect, or secondary liability for the behavior

of those individuals, because (a) in its search results covering billions of web pages, Google at one point included links to a handful of pages from which the allegedly infringing material could be accessed; and (b) while Google removed those links from its search engine after receiving notification of the alleged infringement from Blues Destiny, Google did not do so as fast as Blues Destiny would have liked. Blues Destiny's Amended Complaint fails as a matter of law for several reasons.

As a preliminary matter, Blues Destiny does not allege they have received copyright registrations from the U.S. Copyright Office. The case should not go further. The certificates of registration that Blues Destiny failed to obtain are a jurisdictional prerequisite to bringing suit. Section 411(a) of the Copyright Act makes clear that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Absent registration of the works at issue, this Court does not have subject matter jurisdiction over the action and it must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

Even if the Court had jurisdiction, the facts Plaintiff has alleged do not come close to stating a claim against Google for vicarious copyright infringement or for inducing copyright infringement.

Blues Destiny has failed to state a claim against Google for vicarious copyright infringement because there are no factual allegations that Google had the right and ability to control the alleged direct copyright infringement at issue, or that Google profited directly from such alleged infringement on third-party websites. Blues Destiny's allegations that Google could have blocked links in its search index are simply inadequate to show control over the alleged infringement. And Blues Destiny's generalized allegations that Google has a financial interest in

an increased user base, are patently inadequate to show that Google profited directly from the specific direct infringement alleged to have taken place on third-party websites.

Blues Destiny's allegations that Google helps people find websites including ones where they can infringe copyrights similarly fall far short of stating a claim for inducement of infringement. The Supreme Court has made clear that to face secondary liability for inducement, a defendant must have engaged in purposeful, culpable expression and affirmative conduct demonstrating that it distributed its product with the object of promoting infringement. Blues Destiny's single allegation that Google does not filter out links to allegedly infringing materials from its search results, even assuming that it were somehow possible for it to do, does not remotely demonstrate that Google created its search engine so that people would use it for infringing purposes and encourages them to do so.

## BACKGROUND

*Defendant Google Inc.*

Google Inc. ("Google") is located in Mountain View, California. Google's mission is "to organize the world's information and make it universally accessible and useful." http://www.google.com/corporate/index.html. While Google offers dozens of products in service of this goal, its most recognizable offering is an Internet search engine located at www.google.com (and more than a hundred other country-specific Internet domains). Anyone with access to the Internet can search Google's index for free by inputting a search query into a field provided on Google's home page. Google's search engine then locates websites or other data on the Internet that it believes relates to the query, and presents a list of such sites and information as "search results." Google's proprietary technology analyzes *billions* of pages on the Internet when determining which pages should be displayed in response to a particular user query. *See generally, Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 184 (D.D.C. 2005)

(describing how Internet search engines function as follows: "The defendants' websites are commonly referred to as search engines, and are an indexing tool used to locate material available on the internet in response to search terms provided by the user. In essence, Yahoo! and Google act as a type of electronic library catalogue, giving users additional ways to navigate the Internet and find sites that may be relevant to the user's interests.") (internal quotations and citations omitted).

### *Plaintiff Blues Destiny Records, L.L.C.*

Blues Destiny Records, L.L.C. ("Blues Destiny") is a music record label that claims to own (or the licensee of) copyrights in sound recordings for three albums created by Peter McGraw, Roy Powers, and Rony Sessum, respectively (collectively the "Works in Suit"). *See* Am. Compl. ¶ 13; Ex. A. Blues Destiny has not alleged the existence of any copyright registrations for the Works in Suit.

### *The Present Action*

Blues Destiny filed its initial Complaint on December 7, 2009. (Docket No. 1). On December 11, 2009, Blues Destiny filed a nearly identical Amended Complaint as a matter of course. Blues Destiny asserts direct copyright infringement against a German website called RapidShare AG ("Rapidshare"), alleging that Rapidshare "knowingly hosts unauthorized copies of Plaintiff's sound recordings." Am. Compl. ¶¶ 16, 20.

Blues Destiny does not allege that defendants Google or Microsoft, Inc. ("Microsoft") have engaged in direct infringement. Instead, it claims that they are liable for secondary infringement by operating search engines that can be used to find billions of different webpages on the Internet, including webpages hosted by Rapidshare. Blues Destiny brings the following claims against Google and Microsoft: (1) contributory copyright infringement (Count I); (2) vicarious copyright infringement (Count II); and (3) inducement of copyright infringement

(Count III). Blues Destiny seeks to hold Google liable because it operates an Internet search engine and somewhere on the Internet materials exist that allegedly infringe its copyrights.

## ARGUMENT

### I. LEGAL STANDARDS

Under Fed. R. Civ. P. 12(b)(1), the Court will dismiss a complaint "for lack of subject-matter jurisdiction." The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists over the claims alleged in the complaint. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

Under Fed. R. Civ. P. 12(b)(6), the court will dismiss a claim which fails "to state a claim on which relief can be granted." When considering a motion to dismiss under Rule 12(b)(6), the court accepts as true the allegations in the Complaint. *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). In addition, the Court may consider facts properly subject to judicial notice, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), including the contents of Google's website located at www.google.com. *See, e.g., Full Circle Dairy, LLC v. McKinney*, 467 F. Supp. 2d 1343, 1347 n.6 (M.D. Fla. 2006) (taking judicial notice of website content where authenticity of such content was not in dispute and matters of which notice was sought were capable of accurate and ready determination).

A court addressing a motion to dismiss for failure to state a claim conducts a two-part inquiry. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). First, the factual and legal elements of a claim should be separated, and all legal conclusions should be disregarded. *Id.; see also Burroughs v. Broadspire*, 323 Fed. Appx. 730, 731 (11th Cir.) (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246, 1253 (11th Cir. 2005)), *cert. denied*, 130 S. Ct. 638 (2009). Second, the Court should determine whether the factual allegations of the complaint are sufficient to plausibly give rise to an entitlement to relief if the facts alleged are proven. *See*

*Iqbal*, 129 S. Ct. at 1949; *see also Sinaltrainal v. Coca Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009). Unwarranted deductions of fact in a complaint should be disregarded for the purpose of testing the sufficiency of the allegations. *Sinaltrainal*, 578 F.3d at 1268. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

## II. THE CLAIMS AGAINST GOOGLE SHOULD BE DISMISSED FOR LACK OF FEDERAL SUBJECT MATTER JURISDICTION

Blues Destiny's case should be dismissed for lack of subject-matter jurisdiction because it has not registered the copyrights at issue. The Copyright Act requires a plaintiff to register its copyrights with the Copyright Office before filing an infringement action. 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.").[1] The registration requirement is jurisdictional. *See BUC Intern. Corp. v. Int'l Yacht Council, Ltd.*, 489 F.3d 1129, 1142 (11th Cir. 2007) (copyright registration "is a prerequisite for bringing an action for copyright infringement."); *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1285 (11th Cir. 2000) (same); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1532 (11th Cir. 1994) (same). A copyright infringement complaint that fails to allege

---

[1] Preregistration under 411(b) is a stop-gap measure available for qualifying unpublished works that affords protection until a work is published and the copyright owner can obtain actual registration. See 17 U.S.C. § 408(f); see also House Report on the Family Entertainment and Copyright Act of 2005, H.R. Rep. No. 109-33, at 4 (2005) ("Since works are generally not formally copyrighted until they are in final form and ready for distribution to the public, civil remedies for the distribution of pre-release works are lacking. This section will give the Register flexibility to determine which classes of works are appropriate for preregistration."). Because Blues Destiny's claims involve works already in distribution, preregistration is not implicated by this action.

registration of the copyrights being asserted is properly dismissed for lack of subject matter jurisdiction. *See, e.g., Telemax Entm't, Inc. v. Telemundo Network, Inc.*, No. 04-20150-CIV-GRAHAM, 2004 WL 3019373, at *3 (S.D. Fla. Dec. 16, 2004) (dismissing copyright action under Federal Rule 12(b)(1) where plaintiff failed to register works in suit prior to action); *Rene Perez & Assocs., Inc. v. Almeida*, No. 96-1201-CIV-DAVIS, 1996 WL 541736, at *5 (S.D. Fla. May 30, 1996) (same); *Newborn*, 391 F. Supp. 2d . at 189 (finding failure to allege that work had received copyright registration number fatal to plaintiff's claims); *see also Watkins v. Southeastern Newspapers, Inc.*, 163 Fed. Appx. 823, 825 (11th Cir. 2006) (affirming summary judgment for defendant in copyright infringement suit where plaintiff had not registered copyrights before bringing claim).

Courts of this Circuit have strictly interpreted Section 411(a), reading it to require that the Copyright Office actually issue (or formally refuse to issue) a certificate of registration before a court may exercise jurisdiction over an infringement action. *See, e.g., M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 n.4 (11th Cir. 1990) (citing with approval cases requiring issuance of registration certificate as jurisdictional prerequisite to bringing copyright infringement suit); *Kaye Homes, Inc. v. Original Custom Homes Corp.*, No. 2:07-cv-392-FtM-29SPC, 2007 WL 2407005, at *3 (M.D. Fla. Aug. 20, 2007) (dismissing complaint pursuant to Rule 12(b)(1) where copyright registration applications were merely pending); *Home Design Servs., Inc. v. Green Horne Corp.*, No. 06:03CV425-ORL-22DAB, 2003 WL 21544165, at *2 (M.D. Fla. May 30, 2003) (same).

This strict interpretation of Section 411(a) finds strong support in the plain language of the Copyright Act. As explained by one court:

> Sections 411(a), 410(a), and 410(b) all show a clear congressional intent to have
> the Copyright Office review the materials submitted and pass judgment on their

> copyrightability before those materials are considered "registered" for purposes of the jurisdictional requirements of Section 411(a). Section 410(d) deals with the "effective date" of a registration, not what it takes for a registration to occur, and multiple provisions of this title clearly demonstrate that registration occurs after a Copyright Office review, not simply by the applicant submitting materials.

*Specific Software Solutions, LLC v. Institute of Workcomp Advisors, LLC*, 615 F. Supp. 2d 708, 715 (M.D. Tenn. 2009); *see also Walton v. U.S.*, 80 Fed. Cl. 251, 261 (Fed. Cl. 2008) ("The clear and plain language of the statute requires, as a condition to bringing suit, either the registration of the copyright or the Copyright Office's refusal to register the copyright."); William F. Patry, *Patry on Copyright* § 17:78 (2009) ("Section 411(a)'s terms are clear and unambiguous: no action for infringement, whether in the complaint or in a counterclaim, may be instituted until registration has been made or refused. Since it is the Copyright Office that 'makes' the registration, not the claimant, merely applying for registration is wholly insufficient.").

Here, each of Blues Destiny's claims against Google arises under the Copyright Act. *See* Am. Compl. ¶¶ 2 (alleging jurisdiction based on the Copyright Act), 47, 50-52 (Count I), 55, 59-61 (Count II), 64-68 (Count III). Accordingly, to invoke properly the subject matter jurisdiction of this Court, Blues Destiny must plead the existence of *registered* copyrighted works that allegedly have been infringed. But Blues Destiny does not allege that it registered with the Copyright Office the copyrights being asserted and does not allege any registration numbers for them. At most, the Amended Complaint alleges infringement of *unregistered* works. The Court, however, lacks jurisdiction to hear such claims. Blues Destiny's Amended Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

### III. COUNTS II AND III INDEPENDENTLY MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

While the Court need not go further to dismiss Blues Destiny's complaint, the pleading suffers from additional, fatal defects that are set forth here in the interests of economy and

convenience. Specifically, the Amended Complaint fails to state a claim against Google for either vicarious liability or inducement of infringement. Those claims should be dismissed with prejudice if the action proceeds.

### A. The Amended Complaint Fails to State a Claim Against Google for Vicarious Liability

To state a claim for relief for vicarious copyright infringement, a plaintiff must plead facts showing *both* that the defendant had the right and ability to control direct copyright infringement committed by a third party *and* that the defendant profited directly from the third-party infringement allegedly at issue. *BUC*, 489 F.3d at 1138 n. 19. Blues Destiny fails to allege facts sufficient to support a finding of either element, let alone both. Its claim for relief for vicarious copyright infringement against Google should be dismissed with prejudice.

#### 1. Google Did Not Have the Right and Ability to Control the Allegedly Infringing Activity

As for the "right and ability to control" element of vicarious liability, Blues Destiny merely alleges that Google has "the right and ability to block or screen links to websites containing illegal copies of Plaintiff's Recordings from appearing in [ ] search results." Am. Compl. ¶ 57. That allegation fails to support a finding of control as a matter of law. Blues Destiny must allege facts showing that Google has the right and ability to control *the directly infringing activity*, not that it merely controls its own systems. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) ("to succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement."). Blues Destiny admits that the direct infringement alleged in this case takes place on websites owned, controlled and operated by third parties and not by Google. Am. Compl. ¶ 55. Blues Destiny does not allege, nor could it, that Google has any control over those

third-party websites or any direct infringement allegedly taking place on them. While Blues Destiny alleges that Google could remove from its search index links to allegedly infringing webpages, that step would not stop the alleged infringement from taking place on those third-party websites and does not constitute control.

The Ninth Circuit addressed this precise question in *Perfect 10, Inc. v. Amazon.com*, concluding that Google lacked control over infringing activity on third-party websites that might be located using Google's search engine. 508 F.3d at 1174 ("Google cannot stop any of the third-party websites from reproducing, displaying, and distributing unauthorized copies of [Plaintiff]'s images because that infringing conduct takes place on the third-party websites."). That well-reasoned decision is consistent with decades of law analyzing vicarious copyright liability, which focuses on defendant's legal right to control infringement by third parties and its failure to do so. *See generally, Nimmer on Copyright*, § 12.04[2]. Copyright law has never saddled a defendant with vicarious liability for copyright infringement committed by strangers taking place far away from its premises.

Reading its Complaint charitably, Blues Destiny might be alleging that Google could *reduce* the amount of alleged infringement by not linking to certain websites. But that is insufficient to support a vicarious infringement claim: "For vicarious liability to attach . . . the defendant must have the right and ability to *supervise* and *control* the infringement, not just affect it . . . ." *Perfect 10, Inc. v. Visa Int'l Service, Ass'n*, 494 F.3d 788, 805 (9th Cir. 2007) (emphasis in original) (rejecting argument that credit card companies whose service was used to pay for infringing content could be held vicariously liable for copyright infringement where their stopping provision of credit card services would lead to a decline in infringing downloads, and affirming dismissal of claim); *Perfect 10, Inc. v. Amazon.com*, 508 F.3d at 1173-74 (Google's

ability to control its own index and search results does not give it the right and ability to control infringing acts taking place on third-party sites, even though blocking links to those sites might theoretically reduce the amount of direct infringement taking place on that site).

Because the Amended Complaint fails to allege any facts that if proven would demonstrate Google's right and ability to control the alleged infringing activity taking place on third-party websites, the Court should dismiss the vicarious infringement claim with prejudice. *See, e.g., Perfect 10, Inc. v. Visa Intern. Service Ass'n*, No. C 04-00371JW, 2004 WL 3217732, at *4-5 (N.D. Cal. Dec. 3, 2004) (dismissing vicarious liability claim where complaint did not set forth facts demonstrating defendant's right and ability to control the infringing activity), *aff'd* 494 F.3d 788 (9th Cir. 2007); *Design Craft Fabric Corp. v. K-Mart Corp.*, No. 98C5698, 1999 WL 1256258, at *3 (N.D. Ill. Dec. 21, 1999) (dismissing claim for vicarious infringement where no allegations from which it could be found that defendant had right to supervise infringing activity).

  2. **Google Did not Receive a Financial Benefit Directly Attributable to the Allegedly Infringing Activity**

Blues Destiny independently fails to state a claim against Google for vicarious copyright infringement because the facts alleged, if proven, would not demonstrate that Google profited directly from the specific direct infringement alleged to have taken place on third-party websites. *See BUC*, 489 F.3d at 1138 n.19 (defendant must both profit directly from and have the right and ability to supervise the infringement to be vicariously liable for copyright infringement). Here, Blues Destiny alleges that "Defendants have a direct financial interest in acting as a gateway and controlling search links that direct users to illegal copies of music files because an increased user base searching for music downloads translates to increased advertising revenue." Am. Compl. ¶ 58. That allegation is insufficient to plead the "direct financial benefit" element because it

does not identify the nature of the benefit received nor does it plead that Google received any financial benefit *as a result of* the direct infringement alleged.

First, Blue's Destiny's allegation regarding the type of financial benefit Google allegedly received is hopelessly conclusory and vague. Courts do not credit theoretical or speculative claims of financial benefit when analyzing vicarious infringement claims. *See Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500 (E.D. Pa. 2006) (conclusory allegations that Google's advertising revenue is directly related to number of users and number of users is increased by alleged infringement held insufficient to allege necessary direct financial interest to maintain claim of vicarious infringement), *aff'd*, 242 Fed.Appx. 833 (3d Cir. 2007); *see also UMG Recordings, Inc. v. Veoh Networks Inc.*, No. CV 07-5744 AHM (AJWx), 2009 WL 334022, at*6 (C.D. Cal. Feb. 2, 2009) (dismissing vicarious liability claim where allegations that investors in website stood to profit from increased number of users attracted to site by availability of infringing materials leading to increased advertising dollars too far removed from alleged infringement to amount to direct financial interest in infringement). Instead, a plaintiff must point to some concrete and cognizable financial benefit that accrued to defendant as a result of the direct infringement alleged. Blues Destiny has failed to do so here.

Second, the financial benefit alleged in a vicarious infringement case must relate *directly* to the direct infringement allegedly at issue. *See Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) ("The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps . . . ."). Here, even assuming counterfactually that Blues Destiny had alleged that Google received some tangible financial benefit, it certainly has not alleged that Google received such benefit *because of* the specific alleged infringement occurring on third-party websites. Blues

Destiny has not alleged that Google obtained even one penny as a result of the direct infringement allegedly at issue. That failure to plead causation is yet another dispositive infirmity in Blues Destiny's vicarious infringement claim. *See Marobie-FL, Inc. v. Nat'l Ass'n. of Fire Equip. Distribs.*, 983 F. Supp. 1167, 1179 (N.D. Ill. 1997) (holding that website hosting service that received a one-time set up fee and flat, periodic fee for hosting did not derive a direct financial benefit from infringement that occurred on a hosted website).

### B. The Amended Complaint Fails to State a Claim Against Google for Inducement of Copyright Infringement

Blues Destiny's claim for relief against Google under the "inducement" species of contributory infringement also fails. To state a claim for inducement of copyright infringement, a plaintiff must allege *facts*, not conclusions, showing that defendant "distribute[d] a device with the object of promoting its use to infringe copyright, as shown by a clear expression or other affirmative steps taken to foster infringement . . . ." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, LTD,* 545 U.S. 913, 936-37 (2005). Plaintiff must demonstrate that the defendant acted with specific intent to encourage third parties to infringe copyrights: "Mere knowledge of infringing potential or of actual infringing users would not be enough here to subject a distributor to liability. . . . The inducement rule, instead, premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful purpose." *Id.* at 937. Blues Destiny has not alleged that the object of Google's search engine is to promote copyright infringement, nor could it consistent with Rule 11.

The facts of *Grokster* powerfully demonstrate the inadequacy of Blue Destiny's factual allegations underlying its inducement claim against Google. Defendants Grokster and StreamCast distributed over 100 million copies of file-sharing software programs that they conceded were used almost exclusively to exchange infringing files, resulting in a "staggering"

volume of infringement. *Id.* at 923. "[F]rom the moment Grokster and StreamCast began to distribute their free software, each one clearly voiced the objective that recipients use it to download copyrighted works, and each took active steps to encourage infringement." *Id.* at 923-24. Both Streamcast and Grokster "broadcast a message designed to stimulate others to commit [copyright] violations." *Id.* at 938. Defendants started distributing the accused software after a group of music companies sued the illegal file-sharing network Napster for facilitating copyright infringement on a massive scale, and both targeted Napster's users and hoped to take Napster's place in the event that a court shut it down. *Id.* at 924-26. In concluding that defendants "acted with a purpose to cause copyright violations," the Court relied principally on both companies' attempt to advertise to and solicit users from "a known source of demand for copyright infringement" – Napster. *Id.* at 938-39.

Google's search engine has nothing in common with the accused file-sharing software at issue in *Grokster*. The indisputably lawful purpose of Google Search is to allow users to find information that they are seeking on the Internet. *See* Am. Compl. ¶ 21 ("Google's principal function is to provide its users the ability to search for and find content on the Internet."); *see Parker*, 422 F. Supp. 2d at 495; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F. 3d at 1155; *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 832 (C.D. Cal. 2006); *Search King Inc. v. Google Technology, Inc.*, Case No. CIV-02-1457-M, 2003 WL 21464568 (W.D. Okla. May 27, 2003). Google indexes billions of Internet webpages and provides sophisticated algorithms free of charge to users around the world allowing them to find webpages responsive to their search queries. With good reason, Blues Destiny has not alleged that Google created its search engine with the object of fostering copyright infringement. Nor has it alleged "purposeful, culpable expression and conduct" such as advertisements or solicitations encouraging infringement or targeting users with a propensity to engage in infringement. And unlike the "staggering" volume

of infringement present in *Grokster*, even Blues Destiny must admit that Google search is used overwhelmingly for non-infringing purposes. Am. Compl ¶ 21 (alleging that Google is used for 70% of all Internet searches in the United States).

To support its inducement claim, Blues Destiny merely alleges that Google elected not to filter or screen from its search results links to third-party websites that allegedly infringe copyrights. Am. Compl. ¶¶ 64-65. But the Supreme Court had made clear that a service cannot be charged with inducement liability based on an allegation that it did not take affirmative steps to prevent copyright infringement. *See Grokster* 545 U.S at 939 n. 12 ("in the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement"). Moreover, the safe harbors of the Digital Millennium Copyright Act ("DMCA") which govern here make plain that an online service need not "monitor[] its service or affirmatively seek[] facts indicating infringing activity . . . ." 17 U.S.C. § 512(m). The bald assertion that an online service is liable as an inducement infringer because it did not employ mechanisms to filter out allegedly infringing material from its search results fails as a matter of law.[2]

Because the Amended Complaint is devoid of factual allegations that if proven would show that Google's object in making its search engine available was to foster infringement, the claim for inducement should be dismissed with prejudice on the pleadings. *See, e.g., Perfect 10,*

---

[2] Blues Destiny does not deny that Google is protected from monetary liability under the DMCA where it removes or disables links in response to DMCA-compliant take-down notices. *See* 17 U.S.C. § 512(d); Compl., Ex. B (setting forth numerous take-down notices sent to Google). A service like Google that has a functioning DMCA process stands in stark contrast to the defendants in *Grokster*, who did nothing to impede copyright infringement from occurring using their software. 545 U.S. at 926. Whatever is to be said about a dispute regarding any particular DMCA notice that Blues Destiny sent Google (and Google believe that its arguments will prevail), the very fact that Google has registered a DMCA agent and routinely responds to take-down notices undermines any notion that its purpose is to encourage copyright infringement.

*Inc. v. Visa Int'l Service, Ass'n,* 494 F.3d at 801-02 (affirming dismissal of inducement claim where complaint failed to allege specific acts of defendant demonstrating clear expression of intent to foster infringement); *Groff Construction, Inc. v. American Pride Building Co., LLC,* No. 2:06 CV 57 FTM 29DNF, 2007 WL 495319, at *4 (M.D. Fla. Feb. 5, 2007) (dismissing contributory infringement claim where complaint failed to allege facts showing that defendant induced or encouraged direct infringement ); *UMG Recordings, Inc. v. Veoh,* 2009 WL 334022, at *6 (dismissing claim for inducement to infringe where complaint did not include factual allegations showing that defendants engaged in affirmative acts to encourage copyright infringement).

## CONCLUSION

WHEREFORE, Defendant Google Inc. respectfully requests entry of an Order granting its Motion to Dismiss and granting such other and further relief the Court deems just and proper.

Date: February 16, 2010

/s/ David H. Kramer
David H. Kramer
California Bar No. 168452
Bart E. Volkmer
California Bar No. 223732
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
650 Page Mill Road
Palo Alto, California 94304
(650) 493-9300 (Telephone)
(650) 493-6811 (Facsimile)
Email: dkramer@wsgr.com
   bvolkmer@wsgr.com

Tonia Ouellette Klausner
New York Bar No. 2597110
Joshua A. Plaut
New York Bar No. 4252342
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
(212) 999-5800 (Telephone)
(212) 999-5899 (Facsimile)
Email: tklausner@wsgr.com
   jplaut@wsgr.com

Robert A. Emmanuel
Florida Bar No. 283797
Joseph Passeretti
Florida Bar No. 860751
EMMANUEL SHEPPARD & CONDON
30 South Spring Street
Pensacola, Florida 32502
(850) 433-6581 (Telephone)
(850) 434-5856 (Facsimile)
E-mail: RAE@esclaw.com
   JAP@esclaw.com

*Attorneys for Defendant Google Inc.*

## LOCAL RULE 7.1(b) CERTIFICATION

Pursuant to Local Rule 7.1(b), counsel for Google conferred with counsel for plaintiff in a good faith effort to resolve by agreement the issues raised by this motion. After consultation, plaintiff opposes Google's Motion to Dismiss.

/s/ David H. Kramer
David H. Kramer
California Bar No. 168452

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 16, 2010, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of an electronic filing to all counsel who have appeared in the action.

/s/ David H. Kramer
David H. Kramer
California Bar No. 168452